UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TRAVIS GABRIEL HISEL,                    )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Case No. 3:04-0924
                                         )        Judge Echols
CITY OF CLARKSVILLE,                     )
                                         )
        Defendant.                       )

## MEMORANDUM

On March 2, 2007, this Court entered an Order and lengthy Memorandum (Docket Entry Nos. 98 & 99) which dismissed many of Plaintiff's claims in this action.[1] Specifically, the Court granted Defendant's Motion for Summary Judgment with respect to Plaintiff's (i) February 17, 2004 EEOC charge; (ii) discrimination claim; (iii) hostile work environment claim; (iv) malicious harassment claim; (v) outrageous conduct claim, and (vi) negligent infliction of emotional distress claim. The Court denied the Motion with respect to Plaintiff's retaliation claim based upon his July 13, 2004 and April 13, 2006 EEOC charges of retaliation.

At the time of the Court's ruling, the parties had filed numerous Motions in Limine (Docket Entry Nos. 76, 78, 79 & 97). Because the Order on the Motion for Summary Judgment significantly streamlined the case, the Court struck the Motions in Limine and instructed the parties to refile Motions in Limine, taking into account the rulings on the Motion for Summary Judgment. The parties were cautioned not to merely refile their previous Motions in Limine.

---

[1] The Memorandum set forth in detail the facts underlying this case. The parties are fully aware of the facts as set forth therein and the Court will not repeat them here.

1

Given the significant reduction in the number of claims as a result of this Court's summary judgment rulings, it was anticipated that the number of Motions in Limine would be correspondingly reduced. Apparently the Court was overly optimistic because Plaintiff doubled his Motions in Limine from two to four, while Defendant increased its Motions in Limine from eleven to twelve, several of which are wide-ranging, and a couple of which contain sub-parts.

## I. DISCUSSION

### A. PLAINTIFF'S MOTIONS IN LIMINE

#### (1) Motion in Limine # 1 (Docket Entry No. 102)

In his first Motion in Limine, Plaintiff seeks to preclude the introduction of any evidence or testimony that he refused to submit to a polygraph examination relating to the police department's investigation of the Cunningham traffic stop. As Plaintiff observes, many courts have held that the results of polygraph tests are generally inadmissible. However, the issue here is slightly different because the evidence at issue is not the results of a polygraph but rather Plaintiff's refusal to take a polygraph test.

Whether to admit a party's refusal to submit to a polygraph examination is within the trial court's discretion. United Fire and Casualty Co. v. Historic Preservation Trust, 265 F.3d 722, 729 (8th Cir. 2001); see, United States v. Harris, 9 F.3d 493, 501 (6th Cir. 1993)(trial court has discretion in determining whether evidence of a party's willingness to submit to a polygraph is admissible). The introduction of polygraph results are generally deemed inadmissible because of the questionable reliability of polygraph tests and the potential for prejudice. Those same concerns are involved where, as here, the issue is the failure to submit to a polygraph examination. State v. Chambers, 194 W.Va. 1, 4 (W.Va. 1995); People v. Eickhoff, 471 N.E.2d 1066, 1069 (Ill. App. 1984). In fact, the

2

prejudice may be greater where a party refuses to submit to a polygraph examination because the logical inference for the jury to draw is that the person refusing to submit to an exam has something to hide, even though there is no concrete evidence (i.e. the polygraph result) to back up that inference. Moreover, allowing introduction of Plaintiff's refusal to take a polygraph examination in relation to the Cunningham stop could result in a "mini-trial" on his reasons for refusing and whether his reasons were valid. Plaintiff may have believed that polygraph tests are not reliable, he did not trust the polygraph tester and/or the management of the police department, or other reasons weighed against taking the test. Such evidence, however, would tend to confuse the jury and would not be helpful in determining the key issues to be decided.

Having made these general observations, the Court notes that Defendant has indicated it is not seeking to elicit testimony about Plaintiff's refusal to submit to a polygraph examination in an effort to suggest the results would be unfavorable. Instead, Defendant claims that Plaintiff is expected to testify that the Cunningham investigation was delayed. Defendant seeks to show that the delay was as a result of Plaintiff initially agreeing to submit to a polygraph but later changing his mind. Given these representations, the Court will reserve ruling on this Motion to see how the factual record develops at trial.

### (2) Motion in Limine # 2 (Docket Entry No. 103)

Plaintiff seeks to preclude the introduction at trial of the EEOC Dismissals and Notices of Right to Sue letters of March 22, 2004 and July 14, 2004. It is Plaintiff's position that those documents are not relevant under Fed. R. Evid. 401 and the introduction of those documents is highly prejudicial and has little probative value. Defendant asserts that it is not seeking to admit any substantive determinations of the EEOC, just the date that the Plaintiff filed his Complaint

3

"EEOC determinations are not homogeneous products; they vary greatly in quality and factual detail." Johnson v. Yellow Freight Sys. Inc., 734 F.2d 1304, 1309 (8th Cir. 1984). Because of that, there is a "danger of unfair prejudice" and the possibility that "the time spent ... in exposing the weaknesses of the EEOC report would add unduly to the length of the trial." Id. Because of such concerns, a district court may categorically refuse to admit EEOC cause determinations at trial. EEOC v. Ford Motor Co., 1996 WL 557800 at *12 (6th Cir. 1996). Categorical refusal aside, the Court concludes that the EEOC Dismissals and Notices of Right to Sue letters have little probative weight and a possibility of great prejudice. A jury could attach undue weight to the Dismissal and view it as a suggestion that there was no retaliation, as opposed to merely a finding that the agency found no probable cause. See, Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997)

To the extent Defendant finds it necessary to introduce evidence about the dates of Plaintiff's filings with the EEOC and that agency's issuance of right to sue letters, it is expected that the parties can enter into a stipulation as to those dates. If not, Defendant can seek to have the Court take judicial notice of the filings with the EEOC. See, Dugay v. JP Morgan Chase, 2006 WL 2792043 at *2 (D. Ariz. 2006)(collecting cases indicating court can take judicial notice of EEOC charge and right-to-sue letters as records of an administrative body or because they are matters contained in the Court's records).

This Motion in Limine will be granted.

**(3) Motion in Limine # 3 (Docket Entry No. 104)**

Plaintiff seeks to bar any evidence or testimony about the fact that he met his wife through a computer internet dating site. Since the issue in this case is whether Plaintiff was subjected to

4

retaliation for having engaged in protected activity, the Court perceives no relevance to such information. Accordingly, this Motion in Limine will be granted.[2]

### (4) Motion in Limine # 4 (Docket Entry No. 105)

Plaintiff seeks to preclude the introduction of the videotape relating to the Cunningham traffic stop. He claims the videotape does not accurately portray the stop since the audiotape portion only contains the statements he made, and not those made by Cunningham. Additionally, he claims that the videotape is unduly prejudicial because Plaintiff referred to members of the Clarksville Police Department as "p******."[3] In response, Defendant claims that as a result of the Cunningham stop, Plaintiff was disciplined for ten conduct violations and that the videotape helps to establish the propriety of the discipline imposed.

It appears that the videotape of the Cunningham stop may be relevant to show that the actions taken by the Clarksville Police Department in relation thereto were appropriate. While the videotape may not contain the statements made by Cunningham, it apparently does contain those made by Plaintiff. Since Defendant was concerned with Plaintiff's (as opposed to Cunningham's) conduct, and since the videotape was apparently part of its investigation into the Cunningham incident, the Court finds the jury should be allowed to view the videotape. To the extent that Plaintiff is heard saying that Clarksville police officers are "p******," such a statement may be relevant to show

---

[2]In its response, Defendant indicates that it does not presently anticipate introducing any evidence on this issue but that at trial such evidence may become relevant. To the extent Defendant believes this evidence somehow becomes relevant during the course of the trial, Defendant can request leave to make inquiry into the matter at that time.

[3]The ellipses are in the original and the Court does not know the exact word used by Plaintiff.

5

Plaintiff engaged in inappropriate conduct and disloyalty, two of the charges for which Plaintiff was disciplined. Accordingly, this Motion in Limine will be denied.

## B. **DEFENDANT'S MOTIONS IN LIMINE**

### (1) Motions in Limine # 12 - #15 (Docket Entry No. 106-109)

Defendant's Motions in Limine # 12 through # 15 are wide-ranging, overlapping, and not easy to categorize. In Motion in Limine # 12, Defendant seeks to preclude any evidence or testimony about the fifteen grievances Plaintiff filed with the Clarksville Police Department. In Motion in Limine # 13, Defendant generally seeks to preclude any evidence or testimony which does not directly relate to Plaintiff's discipline for the Cunningham stop or his failure to be promoted to the Child Advocacy Detective position. In Motions in Limine # 14 and # 15, Defendant seeks to exclude any evidence or testimony about certain specified grievances Plaintiff has filed against his employer. The basis for exclusion of all of this evidence is this Court's ruling on Defendant's Motion for Summary Judgment.

Defendant prefaces each of its Motions in Limine with a summary of what it purports to be this Court's ruling on the Motion for Summary Judgment. Defendant asserts "[p]ursuant to the Court's ruling on [summary judgment], Plaintiff's action is now limited to recovery for his claims for retaliation as outlined in his July 13, 2004 (Plaintiff's conduct at the Cunningham traffic stop) and April 13, 2006 (Defendant's failure to promote Plaintiff to Child Advocacy Detective) Charges of Discrimination." (Docket Entry No. 109 at 1). From that Defendant argues "[o]nly those events, comments, persons or claims directly related to Plaintiff's discipline for the Cunningham stop (Discipline in EEOC [charge] of July 13, 2004) and his failure to obtain the Child Advocacy Detective position (Failure to Promote in EEOC [charge] of April 13, 2006) are relevant." (Id. at

6

4). Defendant further asserts "there is no remaining claim for retaliatory harassment." (Id. at 2)

Defendant's review of this Court's Memorandum constitutes either a fundamental misunderstanding

of this Court's ruling, or a gross mischaracterization of the same.

While it is true that the Court dismissed all of Plaintiff's claims except for those based on

his July 13, 2004 and April 13, 2006 EEOC charges, the Court did not, as Defendant suggests, limit

Plaintiff's proof to the facts underlying the Cunningham stop and the Child Advocacy Detective

position. Quite the contrary, the Court specifically rejected the very arguments which the Defendant

now characterizes as the holding of the Court when it considered the same in relation to Defendant's

Motion for Summary Judgment:

> Defendant asserts that Plaintiff's retaliation claims should be limited to the
> specifics of the charges, i.e. whether he was retaliated against in relation to the
> Cunningham investigation or the denial of the Child Advocacy Detective position
> The law does not support such a narrow reading of the charge.
> In addition to charges contained on the face of an EEOC charge, "courts will
> also review any additional claims that 'can reasonably be expected to grow out of the
> EEOC charge.'" Young v. Daimler Chrysler Corp., 52 Fed Appx. 637, 639 (6th Cir
> 2002)(citation omitted). "For a charge to grow out of an ensuing investigation, the
> plaintiff's EEOC charge must, at a minimum, relate *facts* that would prompt the
> EEOC to consider or investigate other forms of discrimination." Id. (emphasis in
> original). Hence, "a judicial complaint must be limited to 'the scope of the EEOC
> investigation reasonably expected to grow out of the charge of discrimination,' [and]
> not      tied to the four corners of the one-page form document under all
> circumstances." Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 832 (6th Cir.
> 1999)(quoting Ang v. Procter & Gamble Co., 932 F.3d 540, 545 (6th Cir. 1991)).
> In this case, Plaintiff alleged in his EEOC charges that he was subjected to
> continuing retaliation because he reported racial slurs directed at black police
> officers, threats, insults, and sexually inappropriate comments. Later he alleges
> retaliation because he filed additional EEOC charges and testified at trials in support
> of black Clarksville police officers who were pursuing racial discrimination
> complaints. The retaliation about which he complains (and which serves as the basis
> for his grievances) naturally grows out of the original charges of discrimination he
> filed against the Defendant.

7

(Docket Entry No. 98 at 21-22). Moreover, the Court pointed out that the concern in a retaliation case is with "the big picture," and that it would be for the jury to look at the "mosaic" of facts to determine whether Plaintiff had been subjected to retaliation. (Id. at 24).

Defendant's additional suggestion that Plaintiff cannot set forth evidence relating to retaliatory harassment is also incorrect. Defendant appears to be conflating Plaintiff's claim of a hostile work environment (which this Court dismissed) with Plaintiff's evidence that he was harassed in retaliation for having engaged in protected activity. Again the Court addressed that issue in ruling on the Motion for Summary Judgment, writing:

> In light of the foregoing analysis, Plaintiff's hostile work environment claim will be dismissed. Having made that determination, however, the Court notes that the evidence upon which Plaintiff relies, while not supportive of a claim for a hostile work environment, may be used as an alternative method to show retaliation. That is, Plaintiff may present evidence of retaliation and an adverse employment action, or show retaliatory harassment to meet the requirement that he was subjected to an adverse employment action. See, Morris v. Oldham County Fiscal Court, 201 F.3d 784, 793 (6th Cir. 2000)(modifying third and fourth elements of a retaliation claim by indicating that to prove retaliation an employee may show he was subjected to an adverse employment action or "severe or persuasive retaliatory harassment by a supervisor").

(Id. at 21). Hence, it cannot be said, as Defendant asserts, that Plaintiff cannot introduce evidence relating to retaliatory harassment.

Given this Court's actual ruling on the Motion for Summary Judgment, Defendant's attempt in its Motions in Limine # 12 through # 15 to limit Plaintiff's evidence in whole-scale fashion to the facts which underlie the Cunningham investigation and the Child Advocacy Detective position is not appropriate. To the extent Defendant may have additional reasons for exclusion of certain specific evidence encompassed by these Motions, it can raise its objections at the time the evidence

8

is sought to be introduced or the testimony is elicited. Motions in Limine # 12 through # 15 will be denied.

### 2. Motion in Limine # 16 (Docket Entry No. 110)

In this Motion, Defendant seeks to preclude any evidence that the house Plaintiff owned (and where his mother-in-law stayed) was shot into on September 18, 2004. Defendant asserts that the introduction of such evidence would be unduly prejudicial since no Clarksville police officer was shown to have been involved in the shooting incident.

It appears to the Court that evidence and testimony regarding a shooting into a home owned by the Plaintiff could be relevant to show retaliation. According to Plaintiff, at least one Clarksville police officer, Stanfill, had made death threats against him and those threats were investigated as a part of the Cunningham stop investigation. Thereafter, Stanfill checked out Plaintiff's personnel record which contained the address of the house from the police department. Five days later a shot was fired into the house. The shot came from a .40 caliber firearm, the same caliber used by Clarksville police officers.

Moreover, Plaintiff claims he suspected Officer Nalley may have been involved in the shooting from the start and he immediately made investigators aware of his suspicion. Nevertheless, the Clarksville police department assigned Nalley as the lead investigator into the shooting, even though Plaintiff had named him as a prime suspect.

Given the present record, the Court finds that the evidence relating to the shooting incident could tend to show a retaliatory act and is therefore relevant.[4] While there may be some prejudice

---

[4]In its Motion, Defendant notes that "Title VII is not a 'general civility code.'" (Docket Entry No. 110 at 4). It seems to the Court that having a shot fired into one's dwelling is far beyond a general civility code. In fact, it is a crime and maybe a felony offense.

9

to Defendant given the fact that the shooting was never attributed to a member of the police force, it is also appears the shooting was not attributed to anyone else and was never solved by the investigators. If Defendant wishes, it may inquire into the basis for Plaintiff's contention that police officers were involved in the shooting on cross examination. This Motion in Limine will be denied.

### 3. Motion in Limine # 17 (Docket Entry No. 111)

Defendant seeks to preclude evidence or testimony relating to the cases of <u>Austion v. City of Clarksville</u>, <u>Hall v. City of Clarksville</u>, and <u>Blakely v. Clarksville</u>. Those cases involved claims of discrimination and Plaintiff testified for the plaintiffs in each of those cases. A jury returned a verdict for plaintiffs in each case and the cases are on appeal. Defendant claims that testimony about such trials is irrelevant and could "open the door" to issues which are not germane to this litigation,

Testifying in a Title VII case is obviously protected activity and is therefore relevant. To the extent that testimony relating to those trials may delve into matters which are not at issue in this case, the Defendant can object to such testimony at that time. However, the Court will not allow testimony or evidence as to the verdicts which were returned in those cases or the amount of those verdicts

### 4. Motion in Limine # 18 (Docket Entry No. 112)

Defendant's Motion in Limine # 18 seeks to bar any testimony or evidence that Officers Stanfill, Stephan, Knight and Chancellor committed perjury, but all (except Stanfill) were subsequently promoted. In response, Plaintiff merely asserts that "[c]redibility is always an issue in a Title VII employment action" and "[p]laintiff should be able to compare the discipline that he received as a result of the Cunningham stop, with the discipline, or lack thereof, that was received by other CPD officers[.]" (Docket Entry No. 134)

10

The Court will reserve ruling on this Motion. While the Court does not intend to conduct "mini trials" on the issue of whether the officers committed perjury, perjury is a serious charge and directly goes to credibility. Plaintiff claims Defendant retaliated against him by not promoting him to the Child Advocacy Detective position and that he was treated less favorably than other officers because he had engaged in protected activity. The Court will await an offer of proof prior to ruling on these motions.

**5. Motion In Limine # 19 (Docket Entry No. 113)**

In this Motion, Defendant seeks to bar from the evidence at trial any notes and summaries which Chief Mark Smith of the Clarksville Police Department prepared at the direction of counsel. In objecting to the Motion, Plaintiff merely asserts "this evidence demonstrates the Chief's racial animus towards African-Americans and those who opposed his civil rights practices, such as [Plaintiff]." (Docket Entry No. 135 at 1).

To the extent that Chief Smith prepared notes and summaries at the behest of counsel in regard to pending litigation it would appear that such documentary evidence is protected by the attorney work product doctrine. This doctrine is broader than the attorney-client privilege (which protects confidential communications) and "generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 713 (6th Cir. 2006). Where the subject documents are "prepared or obtained because of the prospect of litigation," they are protected by the work product doctrine. United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006).

Having made these observations, the Court will nevertheless reserve ruling on the admissibility of these documents since the Court recalls that in the Austion v. Clarksville case there

11

was some evidence that the summary and notes prepared by Chief Smith may have been shared with others. Just like the attorney-client privilege, the work product doctrine may be waived made by disclosure to others. See, In re Columbia/HCA Healthcare, 293 F.3d 289, 306-307 (6th Cir. 2002) The Court will await development of the factual record prior to making a definitive ruling on the admissibility of the notes and summaries prepared by Chief Smith.

### 6. Motion in Limine # 20 (Docket Entry No. 145)

Defendant seeks to prohibit the introduction of any medical records or testimony regarding Plaintiff's treatment by Nancy Wilkerson and Lance Sherley. Defendant claims that it made repeated requests for the production of Plaintiff's medical records but that despite those requests it received only a one page document which excused Plaintiff from work.

In response, Plaintiff claims that he is not in possession of the medical records, that the facility where he was receiving medical treatment has transferred ownership, and that he is in the process of obtaining those records. Plaintiff does not explain if earlier attempts were made to retrieve the records and if not, why not. Generally, if a party fails to produce evidence during discovery, said party will be prohibited from presenting such evidence at trial. Nevertheless, the Court will reserve ruling on this Motion pending further explanation and argument by counsel.

### 7. Motion In Limine # 21 (Docket Entry No. 115)

In this Motion, Defendant seeks to preclude evidence that Officer Stanfill engaged in excessive force. According to Plaintiff, in January 2002, Stanfill allegedly put out a lit cigarette by

12

snuffing it out on the face of a suspect. This evidence, Plaintiff argues, shows Stanfill's character[5] and viciousness and further lends support for Plaintiff's contention that he properly feared Stanfill.

The fact that Stanfill may have intentionally caused physical harm to another could lend support to Plaintiff's theory that Stanfill was capable of retaliation and further that he was disposed to inflicting physical harm on others. In this sense, such evidence could be viewed as relevant within one of the limited "other acts" evidence covered under Rule 401. However, Rule 403 also must be considered, and it provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Several of these concerns are applicable here. Allowing the introduction of evidence relating to an allegation that a police officer put out a cigarette in a suspect's face could be extremely prejudicial and confuse the issues by drawing attention away from whether Plaintiff was subjected to retaliation, which is the critical issue in this case. The chief evil of "other act" evidence is that the jury will find that the actor has a propensity to commit the "other act" and is therefore a bad person. See, United States v. Fraser, 448 F.3d 833, 843 (6th Cir. 2006).

Further, the Court has not been informed that Stanfill was ever convicted of an offense in relation to this allegation or even that the department found he had engaged in such conduct. This raises the prospect of a "mini trial" on this issue which could result in undue delay. Balancing the minimal

---

[5]Insofar as Plaintiff's reference to "character" suggests that Stanfill will be called as a witness, the Court notes that Fed. R. Evid. 608 allows for the introduction of specific instances of misconduct. However, the specific incidents of conduct must be probative of truthfulness or untruthfulness. Stanfill's alleged use of force would not appear to relate to truthfulness. The Court also notes that Fed. R. Evid. 609 allows a party to attack the credibility of a witness who has been convicted of a crime.

13

probative value of this evidence relating to the question of retaliation against the danger of unfair prejudice, confusion, and time, the Court will not admit testimony or evidence in relation to Stanfill's alleged excessive force in January 2002.

### 8. Defendant's Motion in Limine # 22 (Docket Entry No. 116)

In this Motion, "Defendant requests an Order prohibiting Plaintiff was [sic] testifying as to hearsay evidence that he has not heard directly." (Docket Entry No. 116) Defendant notes that Plaintiff's discovery responses "are replete" with statements about what Plaintiff has been told by others.

This Motion is overbroad and will be denied since the Court does not know the exact evidence which Defendant seeks to preclude. Moreover, while hearsay is generally inadmissible under Fed. R. Evid. 802, there are numerous exceptions to the general prohibition set forth in Fed. R. Evid. 803. Thus, the Court cannot simply prohibit so called "hearsay evidence" in whole-scale fashion without knowing what the facts are.

### 9. Defendant's Motion in Limine # 23 (Docket Entry No. 117)

In this Motion, Defendant seeks to prohibit the introduction at trial of what it labels "evidence of comments/conduct spanning more than 15 years and unrelated to Plaintiff's cause of action." (Docket Entry No. 117 at 1). Specifically, Defendant seeks to preclude evidence and testimony about the use of certain racial slurs by members of the Clarksville Police Department, as well as a rumor which Plaintiff was alleged to have heard.

In Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994), the Sixth Circuit set forth the considerations which a trial court should utilize in balancing the probative value of evidence against the harm likely to result from its admission in the context of statements which are

14

alleged to show employer bias. In striking the balance, the trial court is to consider "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time" to the complained of actions. Id. at 1330.

Given Defendant's representation about the statements at issue, the balance tips decidedly in favor of inadmissibility of a statement made by Chief Smith fifteen or twenty years ago. Chief Smith is alleged to have used the "N" word in one conversation in the late 1980's. While unquestionably he was a decision-maker in the Clarksville Police Department during the times in question, the one isolated statement some twenty years ago was not made in relation to any of the events at issue in this case and, without more, is too remote in time to be very probative. When put to the balancing test of Rule 403, the evidence should be excluded.

The admissibility of the alleged statements made by Sergeant Poston and Lieutenant Carney is less clear. Poston is alleged to have made a racial slur in August 2002 in regard to Officer Martin Hall. While isolated, that comment is less dated than that made by Chief Smith, and allegedly was made by one in the supervisory command decision makers concerning a black officer for which Plaintiff later testified at trial. According to Defendant, Lieutenant Carney is alleged to have "used racial slurs in the past referring to black police officers in the Clarksville Police Department." (Docket Entry No. 117 at 5). Questions such as when he allegedly made those statements, how frequently he made such statements, and his role in the chain of command in relation to Plaintiff is not clear from Defendant's filing. The Court will reserve ruling on the admissibility of the statements alleged to have been made by Sergeant Poston and Lieutenant Carney.

15

Finally, Defendant seeks to preclude reference at trial as to certain rumors about Plaintiff's trustworthiness because he recorded conversations and he filed complaints. Defendant represents that there is no evidence as to how or when these rumors began, or proof as to who heard the rumors. Moreover, Defendant claims that only unidentified officers on the night shift are said to have heard such rumors. Accepting Defendant's representations, evidence relating to the rumors would be hearsay and not admissible. Nevertheless, the Court will reserve ruling on the admissibility of this evidence until trial in order to allow Plaintiff the opportunity to establish some proper basis for the introduction of this evidence.

## II. CONCLUSION

For the foregoing reasons, a ruling on Plaintiff's Motion in Limine # 1 (Docket Entry No. 102) will be Reserved. Plaintiff's Motions in Limine # 2 and # 3 (Docket Entry Nos. 103 & 104) will be Granted. Plaintiff's Motion in Limine # 4 (Docket Entry No. 105) will be Denied. Defendant's Motions in Limine # 12, # 13, # 14, # 15, # 16 and # 22 (Docket Entry Nos. 106, 107, 108, 109, 110 and 116) will be Denied. Defendant's Motion in Limine # 17, (Docket Entry No. 111) will be Granted in part and Denied in part. The Court's ruling on Defendant's Motions in Limine # 18, # 19 and # 20 (Docket Entry Nos. 112, 113 and 145) will be Reserved. Defendant's Motion in Limine # 21 (Docket Entry No. 115) will be Granted and Defendant's Motion in Limine # 23 (Docket Entry No. 117) will be Granted in part and Reserved in part.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

16