UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRAVIS GABRIEL HISEL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 3:04-0924 |
| | ) JUDGE ECHOLS |
| CITY OF CLARKSVILLE, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion for Remittur (Docket Entry No. 160), to which the Plaintiff has responded in opposition and Defendant has replied.

Defendant City of Clarksville renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), seeks a new trial pursuant to Rules 50 and 59, and requests remittur of the damages award.

**A. Defendant's Motion For Judgment As A Matter Of Law**

In reviewing Defendant's motion for judgment as a matter of law based on the sufficiency of the evidence under Rule 50(b), this Court views the evidence in the light most favorable to the Plaintiff and gives him the benefit of all reasonable factual inferences. See Black v. Zaring Homes, Inc., 104 F.3d 822, 825 (6th Cir. 1997). The Court does not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. See id. The Court must affirm the jury verdict

unless the Court is left with a definite and firm conviction that a mistake resulting in plain injustice has been committed or if the verdict is contrary to all reason.  <u>Schoonover v. Consolidated Freightways Corp.</u>, 147 F.3d 492, 494 (6th Cir. 1998).  To overturn the jury verdict, the Defendant must show the evidence against Plaintiff was so overwhelming that no one could reasonably find in his favor.  <u>Id.</u>  Defendant fails to meet this high standard.

    1.  **Claim Under 42 U.S.C. § 1983**

Defendant first asserts that this Court erred when it charged the jury on Plaintiff's claimed violation of 42 U.S.C. § 1983. Defendant asserts that a plaintiff may only pursue a claim pursuant to section 1983 where the plaintiff establishes employer conduct which violates both Title VII and rights derived from the Constitution or a federal statute.  That is, there must be a Constitutional or statutory claim independent of an alleged violation of Title VII in order to pursue a simultaneous section 1983 claim.

This is an argument which should have been raised earlier.  It is an argument which should have been specifically raised in Defendant's Motion for Summary Judgment, noted as a disputed issue in the Pretrial Order, raised as a part of Defendant's oral Motion for Judgment as a Matter of Law at either the close of Plaintiff's case and/or the close of the evidence, or raised at the jury charge

conference, but was not. Defendant had several opportunities to object, but did not do so.

Assuming the argument has not been waived, the Court rejects the same. While the Sixth Circuit has indicated that "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII," Day v. Wayne County Board of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984), it has also noted that "arguably, the First Amendment to the Constitution independently protects a government employee from retaliation for complaints about discriminatory employment practices, which are a matter of public concern." Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 168 (6th Cir. 2004).

In any event, the Court can perceive no harm from its instructions to the jury regarding Plaintiff's section 1983 claim. The section 1983 instructions mirrored the Title VII instructions, except that the Title VII instructions did not contain the "under color of state law" element. In fact, the jury was directed to consider specific identified instructions related to Title VII when it considered Plaintiff's section 1983 claim. Moreover, the jury was instructed that even if it were to find in favor of Plaintiff under both Title VII and section 1983, Plaintiff would only be entitled to recover once. Defendant approved the final instructions at the conclusion of the jury charge conference and

3

again at the bench conference after the jury instructions were read to the jury.

Accordingly, the Court will not enter judgment in favor of Defendant merely because the jury was instructed on Plaintiff's section 1983 claim.

### 2. Evidentiary Rulings

Defendant raises a number of arguments in regard to this Court's evidentiary rulings. These include arguments that evidence was improperly introduced while other evidence was improperly excluded.

Defendant first asserts that this Court erred in allowing into evidence EEOC charges which Plaintiff had filed. However, the Sixth Circuit has long held that it is within a court's discretion whether to admit or exclude an EEOC charge. See, Milhous v. Metropolitan Gov't. of Nashville, 2000 WL 876396 at *2 n. 2 (6th Cir. 2000); Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997); Hear v. Mueller, 464 F.3d 190 (6th Cir. 1972).

In this case, the filing of a charge was an element of Plaintiff's retaliation claim, i.e. that Plaintiff had engaged in protected activity. Prior to admission into evidence as exhibits, the EEOC charges were redacted to eliminate references to Plaintiff having filed other extraneous internal complaints and the charges essentially just apprised the jury that Plaintiff was complaining

4

to the EEOC about being retaliated against. Moreover, the jury was throughly instructed on the effect of the filing of such a charge:

> You are to draw no inferences from Plaintiff's filing of charges with the Equal Employment Opportunity Commission or EEOC that he was in fact subjected to retaliation. A Plaintiff is required to file charges of discrimination with the EEOC prior to filing a lawsuit. Such a charge identifies the parties and describes generally the complained of act or practice. The charge also limits the claims that may be pursued in court to the incidents of discrimination or retaliation which are specifically stated in the charge and incidents that may reasonably be expected to grow out of the allegations in the EEOC charge during a reasonable investigation by the EEOC.
> . . . .
>
> Moreover, the filing of a charge with the Equal Employment Opportunity Commission has no effect on the duties and obligations of an employer or employee, except that the employer may not retaliate against the employee for the employee having filed such a charge.

The Court discerns no error allowing Plaintiff to present evidence to show he had filed charges of retaliation.

Defendant next asserts that it was improper for the Court to allow Plaintiff to testify about the "Poston" racial remark at the shooting range and improper to allow several African American officers to testify that they had previously been involved in discrimination suits against the city, that Plaintiff met with them, supported their claims, and in some cases testified in court on their behalf. Again, the Court finds no error because it was relevant to Plaintiff's claims of retaliation and corroborated testimony of the reasons Defendant retaliated against him.

5

Plaintiff claimed that while on the shooting range he heard Sgt. Poston refer to Officer Martin Hall as a "nigger," and Plaintiff reported the remark to Chief Mark Smith. Chief Smith was the ultimate disciplinarian and final decision maker within the police department.

While Defendant certainly would have preferred not to have this evidence introduced, it was admitted as a part of Plaintiff's proof that Defendant retaliated against him because he, a white police officer, supported the racial discrimination claims of African American police officers, among other things. The alleged racial epitaph made by Sgt. Poston on the shooting range was in reference to Officer Martin Hall, an African American officer, who had sued the city for racial discrimination and harassment. Plaintiff testified he was harassed and retaliated against because of his support for these fellow officers. "[B]ackground evidence of an employer's discriminatory policies or practices 'may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive'" and such evidence is therefore admissible where it serves to "'assist in the development of a reasonable inference of discrimination within the context of each case's respective facts.'" McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1101 (8th Cir. 2005)(citation omitted).

6

Defendant next claims that the Court erred in allowing testimony about alleged threats to Plaintiff which were encompassed in earlier EEOC charges found to be untimely. Similar arguments were rejected by the Court in its ruling on Defendant's Motion in Limine and that discussion is incorporated herein by reference to Docket Entry No. 149 at 6-9. Briefly, the fact that a specific charge is deemed untimely does not mean that the facts underlying the charge are necessarily inadmissible. Plaintiff alleged in his EEOC charges that he was subjected to continuing retaliation because he reported racial slurs directed at black police officers, threats, insults, and sexually inappropriate comments. Later he alleged retaliation because he filed additional EEOC charges and testified at trials in support of black Clarksville police officers who were pursuing racial discrimination complaints. To establish his retaliation claim, Plaintiff was required to show either an adverse employment action or retaliatory harassment. See, Morris v. Oldham County Fiscal Court, 201 F.3d 784, 793 (6th Cir. 2000)(modifying third and fourth elements of a retaliation claim by indicating that to prove retaliation an employee may show he was subjected to an adverse employment action or "severe or persuasive retaliatory harassment by a supervisor"). Evidence of prior threats could be utilized to establish retaliatory harassment.[1]

---

[1] In its reply brief, Defendant claims that the jury was not presented with a claim for retaliatory harassment. While that may be so, the jury was instructed, pursuant to Morris, that a claim

7

Defendant also argues the Court erred in allowing evidence related to the shooting into a house owned by Plaintiff, which was occupied by his mother-in-law. Again, this argument was considered in detail in this Court's ruling on Defendant's Motion in Limine. As indicated in this Court's Memorandum:

> It appears to the Court that evidence and testimony regarding a shooting into a home owned by the Plaintiff could be relevant to show retaliation. According to Plaintiff, at least one Clarksville police officer, Stanfill, had made death threats against him and those threats were investigated as a part of the Cunningham stop investigation. Thereafter, Stanfill checked out Plaintiff's personnel record which contained the address of the house from the police department. Five days later a shot was fired into the house. The shot came from a .40 caliber firearm, the same caliber used by Clarksville police officers.
> Moreover, Plaintiff claims he suspected Officer Nalley may have been involved in the shooting from the start and he immediately made investigators aware of his suspicion. Nevertheless, the Clarksville police department assigned Nalley as the lead investigator into the shooting, even though Plaintiff had named him as a prime suspect.

(Docket Entry No. 149 at 9). Defendant has presented nothing which leads this Court to conclude that its pretrial ruling relating to this evidence was erroneous.

In another objection, Defendant asserts that this Court erred when it excluded evidence of the nature and extent of the Disciplinary Appeal Hearing Committee hearing relating to Plaintiff's discipline. As the Court recalls, the jury was fully

---

for retaliation can be established by showing an adverse action <u>or</u> retaliatory harassment. That is, retaliation may be established by showing the existence of retaliatory harassment.

8

apprized of the disciplinary process within the police department, as well as the appeal process, in which a panel of two city council members and a police officer (the Disciplinary Appeal Hearing Committee) ultimately decided Plaintiff's discipline. The Court does not believe that the jury was somehow left in the dark about the process and any further evidence on the issue could lead to jury confusion and could result in prejudice to Plaintiff since the city attorney acted as the judge of the committee and its members were appointed by the Defendant City of Clarksville.

Defendant also argues, without citation to authority, that the Court erred in not advising the jury on attorney's fees. However, the potential for an award of attorney's fees is not the proper basis for a jury instruction. See, Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000).

Finally with regard to evidentiary matters, Defendant claims that the Court erred when it denied Defendant's motion to exclude any evidence regarding Plaintiff's medical treatment and proof of plaintiff's subjective complaints about his physical or emotional health. The Court was presented with this issue in Defendant's Motion in Limine but reserved ruling pending development of the record at trial. At trial Plaintiff was allowed to discuss his physical and mental health, but no medical records or statement by medical professionals was offered or admitted. This was not improper. "It is well settled that Title VII plaintiffs can prove

9

emotional injury by testifying without medical support. Turic v. Holland Hospital, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996). Defendant had the opportunity to depose the Plaintiff prior to trial on the issue of damages. After Plaintiff testified on the issue at trial, Defendant was again afforded a full opportunity to cross-examine him about his physical and mental status and what affect Defendant's conduct allegedly had on his overall well-being.

### 3. Sufficiency of the Evidence on the Retaliation Claim

As to Plaintiff's retaliation claim, Defendant reasserts many of the same arguments it previously made in moving for summary judgment and in requesting judgment as a matter of law at the close of Plaintiff's case and at the close of the evidence. The Court incorporates its previous rulings on the issue herein.

The evidence at trial was hotly contested. The jurors listened carefully to the evidence presented and communicated through their verdict that they understood the Court's instructions, and the jurors followed the instructions when they applied the law to the facts presented to them. The jury unanimously found that Defendant unfairly disciplined Plaintiff for his conduct related to a traffic stop involving Jonathan Cunningham in retaliation for Plaintiff's protected activity. However, the jury also found that Plaintiff failed to establish that he was not promoted to the position of Child Advocacy Detective in April 2006 in retaliation for having previously engaged in protected activity.

10

After finding Defendant liable for retaliating against the Plaintiff, the jury awarded $50,000 in compensatory damages.

Defendant also claims that Plaintiff failed to prove a causal connection between his discipline in relation to the Cunningham stop and his protected activity. In addition, Defendant realleges that there was insufficient evidence that the ultimate decision maker had an improper motive. Finally, Defendant claims that discipline imposed on others was not probative because those individuals were not similarly situated to Plaintiff.

Taking the evidence in the light most favorable to Plaintiff, as the Court must do in considering Defendant's Motion for a Judgment as a Matter of Law, the Court finds the totality of the evidence presented sufficiently established a causal connection between Plaintiff's discipline and him engaging in protected activities. This evidence was wide-ranging and included a secretly recorded conversation with Plaintiff by Lt. Ron Knight, head of the Professional Integrity Unit, in a grocery store when Plaintiff was attempting to examine personnel files of other police officers. Other evidence suggested that the later investigation of Plaintiff's actions relating to the Cunningham stop did not follow proper procedures. Indeed, the evidence showed that while internal investigations usually last thirty days or less, the Cunningham investigation was a drawn-out and an elaborate affair, which continued over several months and included three separate

interviews of Plaintiff by the Professional Integrity Unit ("PIU"). Plaintiff also presented evidence that the punishment he received was excessively harsh, which included suspension, removal from the STEP Unit, and remedial training requiring him to ride with supervisors for 192 hours. According to the proof, this discipline was far beyond that imposed upon other police officers who had been disciplined for such things as leaving their patrol duties and falsely responding to radio calls from home, fixing tickets, or lying to PIU investigators. The jury also heard testimony from officers supporting the Defendant's position which the jury could easily determine was not credible. For example, Officer Stanfill claimed that he did not hear any threats made against Officer Hisel, even though other officers testified that Stanfill himself made such threats.

As for the claim that the ultimate decision maker was not shown to have an improper motive, the jury was properly instructed on this issue. Specifically, in the "Causal Connection" instruction, the jury was instructed:

> If you determine that managerial-level employees of the Clarksville Police Department played a significant role in the Defendant's decision-making process and were principally responsible for the Defendant's decisions to discipline Plaintiff following the Cunningham traffic stop and not to promote Plaintiff to the Child Advocacy Detective position, you may consider the statements or conduct of such managerial employees in determining whether there is a causal connection between the Defendant's employment decisions and the Plaintiff's participation in protected activity.

12

Given Chief Smith's initial decision to impose significant discipline which included a suspension, 192 hours of remedial training, "ride alongs" with four different supervisors, and removal from the STEP unit, the Court cannot find as a matter of law that an improper motive was not a part of the decision to impose the discipline on Plaintiff in this case.

Finally, with respect to the similarly situated individuals, Defendant asserts that the individuals being compared must (1) have dealt with the same supervisor; (2) have been subjected to the same standards; and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct and the employer's treatment of them for it. Defendant cites for this proposition <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992). However, subsequent Sixth Circuit cases have made clear that <u>Mitchell</u> was not intended to set forth a hard-and-fast rule for all cases. Quite the contrary, while the factors in <u>Mitchell</u> are to be considered, <u>Mitchell's</u> criteria are not to be "read as an inflexible requirement" and indeed individuals may be comparable, even if they work in different departments and have different supervisors. <u>McMillan v. Catro</u>, 405 F.3d 405, 414 (6th Cir. 2005) citing, <u>Seay v. Tennessee Valley Auth.</u>, 339 F.3d 454, 479 (6th Cir. 2003).

In this case, the jury was instructed:

In determining whether Defendant disciplined Plaintiff after the Cunningham traffic stop more severely than

13

>    other police officers, you may consider whether Plaintiff
>    was similarly situated to other police officers who were
>    disciplined.  You may consider whether the disciplined
>    police officers to whom Plaintiff compares himself had
>    the same job duties and the same supervisors, and whether
>    the other disciplined police officers engaged in similar,
>    more egregious, or less significant conduct than
>    Plaintiff.

This was a proper statement of the law and the Court finds no basis for concluding that the jury did not take into account the relevant factors in determining whether Hisel's punishment was more severe than punishment imposed upon other similarly-situated police officers for roughly comparable conduct. All the employees sought to be compared were patrol officers under Chief Smith's ultimate supervision and discipline.

Having heard the Court's instructions, the jury analyzed the totality of the evidence, weighed the credibility of the witnesses, and returned a verdict in favor of Plaintiff on his retaliation claim in relation to the Cunningham traffic stop. Nothing stated in Defendant's post-trial motion convinces the Court that the evidence was so one-sided in favor of Defendant on this claim that the Court erred in submitting the case to the jury or that the jury erred in returning a verdict in favor of Plaintiff in the amount of $50,000.00 on the retaliation claim related to the Cunningham traffic stop.

### B. Motion For New Trial

The Court may grant a new trial under Rule 59 if the verdict is against the clear weight of the evidence, the damages award is

14

excessive, or if the trial was influenced by prejudice or bias or was otherwise unfair to the moving party. Conte v. General Housewares Corp., 215 F.3d 628, 637 (6th Cir. 2000). Defendant contends the trial was unfair and prejudicial because "smoking gun type evidence," which this Court allegedly wrongfully admitted, added an "emotional element" to the trial.

As already indicated, the Court believes its evidentiary rulings were correct. The Court also finds that the evidence presented did not inject unfair bias and prejudice into the trial.

The Court believes it ruled on evidentiary matters in accordance with the Federal Rules of Evidence. Simply because evidence is damaging to a party's case does not mean the evidence presents the type of bias and prejudice the Federal Rules were designed to preclude from use at trial. The Court has considered and weighed the trial evidence in the case. The Court is not convinced the jury's verdict is against the clear weight of the evidence as necessary to award Defendant a new trial. Therefore, Defendant's Motion for New Trial will be denied.

## C. Motion For Remittur

"'A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of

15

the court.'" Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004) (quoted cases omitted). Advancing arguments it raised in relation to its request for a new trial, Defendant contends remittur is appropriate because the jury heard inadmissible "smoking gun type evidence" that added an "emotional element" to the trial and led the jury to reach its award based on passion, bias, and prejudice.

The Court finds that no remittur is necessary. The Court thoroughly instructed the jury on the law pertaining to Plaintiff's claims and damages. The Court instructed the jury on the types of damages that could be awarded, that Plaintiff had the burden of proving his damages by the preponderance of the evidence, that the damages could not be speculative, and that the jury could not base its verdict on bias or prejudice against a party. The jury is presumed to follow the instructions given. The Court finds the jury listened attentively to many days of evidence and reached a supportable decision that Plaintiff proved his retaliation claim relating to the Cunningham traffic stop by a preponderance of the evidence and was entitled to compensatory damages. Plaintiff testified about his prolonged emotional stress, fear of physical harm, and how the alleged retaliatory actions affected his life. The jury awarded Plaintiff $50,000.00 in compensatory damages, which did not exceed the applicable statutory cap under 42 U.S.C. § 1981a. The Court can discern no reason to believe that the jury's award was based on inflamed passion against the Defendant or

16

was meant solely to punish the Defendant.  The Motion for Remittur will be denied.

**D. Conclusion**

Accordingly, in light of the Court's analysis, Defendant's Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion for Remittur (Docket Entry No. 160) will be DENIED.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE